The final case for argument is 19-1276, Pierce Manufacturing v. E-One. The final case for argument is 19-1276, Pierce Manufacturing v. E-One. May it please the Court, I'd like to begin with Pierce's May 2nd letter in which it informed the Court that it is now dropping Claim 20 of the 915 patent. That was one of only two claims that it asserted for its preliminary injunction motion. Now I believe that Pierce did this because it knows that the claim is invalid, specifically the limitations A through I are, in fact, anticipated by the Seagrave prior art. But regardless of the reasons, I will focus my arguments today on the sole remaining claim, which is Claim 20 of the 536 patent, which includes the 750-pound tip load limitation. District Court erred in granting a preliminary injunction based on that claim because E-One raised a substantial question of invalidity, which Pierce failed to show lack of substantial merit. Single axle quints are not new. In fact, the specification describes them as traditional. And the specification also admits that the, quote, traditional method for increasing a quints ladder length and tip load is to place more weight on the chassis. And that is just basic physics. If you want to put more weight further out on the ladder, you need to put more weight on the chassis to counterbalance the load, otherwise the truck will tip over. Again, this is just basic, traditional, well-known design principles, certainly not something that Pierce invented. So what did Pierce invent? It claims to have invented a single rear axle quint with a ladder that extends 95 feet vertically and 90 feet horizontally with a 750-pound tip load. But E-One presented evidence below to the magistrate that showed that that combination of features was already known in the art and certainly would have been obvious to a person of ordinary skill in the art in 2014. E-One produced prior art photographs and descriptions of two 1990s era Seagrave quints, each with a single rear axle and a 100-foot aerial ladder. E-One also provided sworn declarations from Mr. Salmi documenting a physical inspection of a Seagrave quint in New Jersey. And E-One provided expert declarations explaining, based on the prevailing NFPA standards at the time, that the Seagrave 100-foot ladder would be capable of extending 95 feet vertically and 90 feet horizontally. So no one inspected the 97 and 96 firetrucks, right? That's correct, Your Honor. The inspection was of a 1999 Seagrave prior art quint. Well, you understand why isn't that a problem for you here, I mean, on our standard of review and given the findings that the district court made? It's just a substantial question of validity. I don't believe so, Your Honor. The evidence we put forth was based on 1990s era Seagrave quints. We used the 96 and the 97 models as examples. And my colleague on the other side has argued that the 1997, which was not before the examiner, by the way, was identical to the 1996 for all purposes relevant to this case. There's no reason to believe that the 1999 model isn't also relevant. We presented evidence showing that for all of the salient features in this case, those models are all the same. The only features that they've pointed to between those three models that are different are superficial features such as the shape of the cab and the capacity of the water tank, none of which are claim limitations. And this is the preliminary injunction phase. We're not required to make an actual case of invalidity. The question is vulnerability, not invalidity. Mr. Devaney, what was before the magistrate? I realize that with respect to the 1999 Seagrave quint, I know that there's the July declaration, but that was after the magistrate's decision. What did the magistrate have before him? Was it him or her? Him, I believe. What did the magistrate have before him with respect to the 99 quint? With respect to the 1999 quint, he had two declarations from Mr. Salmi. There was a declaration that was submitted, I believe, in early April, where he provided some information about a quint that he inspected, and then he followed up with a supplemental declaration in which he included more information about the quint that he inspected. That was the 1999 quint. That supplemental declaration was the subject of litigation before the magistrate. Pierce moved to strike it, and in its motion to strike, it's stated as one of its reasons why it wanted to strike it, that this is a piece of prior art that E1 is trying to assert. We responded saying, you're absolutely right. This is a prior art Seagrave quint that we are asserting here. The magistrate overruled their objection, and the evidence came in. Do you think you can prevail without the benefit, under the standard review, if we just look at what was before the magistrate? Do you think you can still prevail, even if you don't have the benefit of the July 5, 2015, is it 2018? 2018, yeah, absolutely, Your Honor. There is pictorial, prior art pictorial evidence of these prior art quints, 1996, 1997. There was a physical inspection of another quint of the same model, different year, but same model. All of that was before the magistrate. Also before the magistrate was expert declarations citing the NFPA standards prevailing at the time. There was information about the Dana axles that are part of our obviousness combination, as well as other axles that were known at the time. Information about the very important 2011 white paper, industry white paper, that is part of our obviousness combination. All of that evidence was before the magistrate, including voluminous expert opinions, claim charts, and argumentation as to why that evidence renders the claims either anticipated or obvious. I guess, let me give you an example, because you're talking in generalities, but below they were quite specific about why they thought that the 96 and 97 ladders weren't sufficiently established to create validity problems when the expert had only reviewed the 99 Seagrave quint. They argue and explain that the E1's experts stated with no support that the 96 and 97 Seagrave ladders meet the height and reach requirements of limitation H, but your own expert explained that aerial ladders are capable of reaching 100 feet in one direction or not And so, that's just one example. I guess the example being, you can't just look at the picture without inspecting the 96 and 97 and be sure they meet that particular limitation, limitation H. So how do you respond to that? I mean, just because the 99 meets limitation H doesn't mean the 96 and 97 meet limitation H. Your Honor, first of all, again, I stress this is a preliminary injunction phase where this court has said you need to present a substantial question of invalidity, but it doesn't have to necessarily be the complete case of invalidity. There could be issues that still have to be investigated and tried during the trial. With respect to your question, however, our expert opined, now remember, the pictures of the 1996 and 1997 Seagraves also included prior art captions and information so we know that they were 100-foot aerial ladders. That in and of itself calls into question the asserted claims because these patents But the expert explained that 100-foot aerial ladders are not necessarily able to reach 90 feet horizontally or 95 feet of height without tipping over and that's right in the expert's testimony on 8307 and 8308. So yes, you can tell from the picture that they're a 100-foot ladder, that doesn't mean they meet the requirement of the claim limitation and the expert admitted that. Well, that's their expert, Your Honor. Our expert opined that based on the NFPA standards and based on Mr. Salmi's inspection of the Seagraves, they were not able to reach 95 feet vertically at 90 feet. Well, that's the problem. The lower tribunal said that was very speculative and even as you said it right now, it sounded incredibly speculative to me so it's kind of hard for me to say they abused their discretion in saying it was speculative. Well, Your Honor, we also had the obviousness combination. Even if the horizontal reach is not proven, which again, I disagree with because we did the inspection, but even if it's not proven Well, we did the inspection of the 99, which wasn't before the magistrate Right. But the 1996 and 1997 clearly have 100-foot ladders. That in and of itself rebuts one of the central premises of these patents, which is that prior art quints with single axles were limited to only 80 feet vertically and 72 feet horizontally. We have our obviousness argument, which means how would a person of ordinary skill in the art increase the reach and the tip load of a prior art quint such as the Seagrave in 2014? They had two choices, Your Honor. They could use a tandem or I hear what you're saying about this. Your problem for me, let me just say, because you can try to convince me on that limitation and possibly you could do it, but your problem is, I gave that as one example, there are many examples that were pointed to in a really good opinion from below, a very detailed and thorough opinion. Another one would be INJ relating to the estimates of weight and where they said, again, Mr. Salami seems to be basing this on two pictures and ignored the weight of the ladder and the counterbalancing calculations. I mean, so there were a lot of little details that all of which led the court below to say this expert is just speculating on all of these limitations and that doesn't feel like enough under the circumstances to meet the substantiality requirement. So that your problem for me is that there's a lot of little things. I understand, Your Honor. I would just point to the fact that they didn't challenge a lot of those limitations below. So limitations A through E are just basic limitations of a quint. I don't think there's any disagreement here that the C grade was a quint, which by definition has its first five features. Why didn't you talk about A through E? I just gave you H, I, and J. Okay. So H, I, and J, it really just goes to the reach and the tip load. Now, the tip load requirement, our expert presented information, you're right, based on Mr. Salami's estimates and they're free to attack his credibility and bias and expertise and so forth. Well, they didn't just attack credibility and bias. I don't even know if they attacked that. I didn't pay close attention to that. They attacked the fact that the estimates lacked taking into account important characteristics that would directly affect those weights. That's not his bias. That's not his credibility. That is the nature of his calculations are improper, wrong, don't meet a Dalbert's test, whatever. It's not him. It's a problem with his suggestions because they fell to account for everything. The experts disputed the calculations and that's based on how that claim, that limitation is construed. That's a claim construction issue. I'd like to just return to the obviousness issue, Your Honor, because the obviousness combination solves that problem. So in 2014, there was only two solutions to increasing tip load and in latter reach of a traditional single axle quint like the C-grade. One was a tandem rear axle. That was described as a traditional method. The only other option was to increase the capacity of the rear axle. And what Pierce is trying to do in these claims is claim ownership of that entire second solution, simply increasing the capacity of the axle. But in 2014, that solution was obvious. We pointed to the 2011 white paper in which a very influential organization was lobbying to increase the ratings for rear axles for emergency vehicles to 33,500 pounds nationwide. And the purpose of that article and the purpose of that white paper was to encourage manufacturers to use higher capacity axles up to 33,500 pounds. And that's precisely what Pierce did. They took a traditional quint like the C-grade, which already had a 100-foot ladder, and they put a 33,500-pound axle on it, precisely as the white paper encouraged. And then they filed a patent application to try to preclude all of their competitors from And even without a motivation to combine, KSR would say that that is obvious under the obvious to try doctrine. But the white paper itself provides a motivation to combine. And that was our substantial case of obviousness. Now they've already dropped claim 20 of the 915 patent, which is where we made our strongest case of anticipation. I believe that's pretty indicative that they think the claim is invalid. The burden was on them to show that our obviousness combination lacked substantial merit. They didn't show any evidence that a person in 2014 of skill in the art was incapable of making that combination, of simply replacing the axle. What's the status of this litigation currently? It's still proceeding, Your Honor. So it's not stayed or anything? It's not stayed. We did file IPR petitions, but there's been no institution decision yet. We expect that in a few weeks. And the injunction is in place, and they're enforcing it. Is there any trial scheduled? I believe trial is scheduled for next year. And I mean, certainly following on Judge Frost's questions, if the PTO were to grant your IPRs, you could always petition the district court, couldn't you, for relief from the preliminary injunction because of a changed circumstance? We could, Your Honor. Why don't we reserve the remainder of your time? We'll hear from the other side. Thank you. When in honors, may it please the court. The district court did not abuse its discretion when it found that E-1 failed to raise a substantial question as to the validity of the asserted patents, and so granted Pierce's motion for As Your Honor has pointed out with my opponent, one of the key issues that the court found was that the invalidity attacks lacked any real substance to it, that it had a lot of holes and a lot of speculation. And the thing that I did not hear this morning, and I expect I will not be able to hear, is that there is no evidence, or at least objective evidence, that the Seagraves could counterbalance a tip load of 750 pounds when the ladder was extended 90 feet horizontally, as is required by limitation J in the 536 patent. As a result, the court below found that E-1's invalidity case was not well developed, contained too much speculation, and lacked substantial merit. And there was no abuse of discretion in this finding. As was discussed in the appellant side, there were actually three trucks here. There is a 1996 Seagrave, a 1997 Seagrave, and we later learned of a 1999 Seagrave. But as Judge Shaw pointed out, only the 96 and 97 Seagraves were actually before the magistrate. While it is true that Mr. Salmi's April and May declarations mentioned an inspection, there was no mention whatsoever of any of the details of what was inspected. There was no description of the year the inspected Seagrave was made, no even description if it was the same model as a 96 or 97, or if it had the same features as those. No description of what the actual vertical height or horizontal reach of the ladder was, what the tip load capability of that ladder was, or even when that inspection allegedly occurred. In fact, there was no details whatsoever on the truck that was inspected. As a result, the magistrate judge correctly held there was never any inspection of the two trucks that were before him. Even after Mr. Salmi's July declaration, in which he supposedly measured the length of the ladder, he never provides any objective evidence on its tip load capacity. Instead of spending your time on stuff that wasn't really what was the main focus of the appellant's argument, he really moved us to obviousness. Can I just tell you to skip over all of this and just go to obviousness? I am happy to go to obviousness, Your Honor, and if I could, while I'm going to get you to obviousness, if I could ask you to turn to, in the first volume of the appendix, appendix page 1353. And so this is a page in that FAMA white paper that he discussed, that he talks about was the motivation to combine the Seagraves with the Dana axles. And on 1353 is what is described in the FAMA white paper on 1351 as typical fire apparatus configurations. And so on 1353, we have an aerial ladder single rear axle, and then below that, an aerial ladder tandem rear axle. So appellant's argument is that this FAMA white paper encouraged manufacturers to use heavier duty axles to get more weight on the back of a truck, and so you could put a single rear axle quint with a 100-foot ladder with a 90-foot horizontal reach and a 750-pound tip load. Now, if you recall back to the appellant's brief, the previous rule or the previous limitation under the Federal Highway Administration, at least, was a 31,000-pound rear axle. So what the FAMA white paper was saying, you can go from 31,000 to 33,500. That's an increase of 2,500 pounds. And you could increase the front axle by another 1,000 pounds. But if you look at how much weight can be put on a tandem rear axle, which is just below that, we're talking 54,000 pounds. That kind of additional capacity was required to have this much weight. Adding 2,000 or 3,000 pounds would not make it obvious that you could then get all those features on a single rear axle. And indeed, there's undisputed evidence that the Dana axles were available long before this FAMA paper. Pierce submitted the declaration. When you say adding a few pounds wouldn't make it obvious, that's not what you have to prove, is it? You just have to prove it wasn't an abuse of discretion for the lower tribunal. And the judge basically found that. They said the fact that these new guidelines came into place would not render the patent claims obvious. He had the basis for that. We went through below all the reasons why it would not be obvious to add that, including the fact that Pierce itself offered a 33,500 pound rear axle in 1998. And so, there was 14 years before the truck was actually released. It also was undercut by E1's own truck. They couldn't even make it work on a 33,500 pound axle. They had to use a 35,000 pound axle. And even then, it took them two years to do it. And all of that was before the magistrate judge? Correct. The fact that we had a 98 axle. The fact that they took so many months to be able to do it themselves? Correct, Your Honor. It was in Mr. Asami's declaration where he talks about we use a 35,000 pound rear axle. Okay. I think we get this one. Anything else you want to add? I'm good, Your Honor. Thank you. Thank you. Thank you. Thank you, Your Honor. Just a couple points. The fact that they offered 33,500 pound rear axles is not relevant. There's no evidence that they actually loaded those axles to 33,500 pounds. There's a difference between capacity and what load you actually put on them. And also, the only evidence comes from a declaration from one of their own employees who merely said they offered the axle. There's not even any proof that they sold a Quint with that axle. Now, the chart that they pointed to in the white paper shows minimum and maximums. It shows the maximum rear axle going up to 33,500 pounds. At the time of that white paper, the regulations regulating emergency vehicles was described as a patchwork. And it hindered the ability and the motivation of manufacturers to actually put 33,500 pounds on the rear axles because if they did that, even if they were allowed to sell it into one particular state with a waiver, that truck would not be able to go on federal highways and it would not be able to largely cross state lines, which is an important part of modern firefighting if you have to go fight a forest fire, for instance, in a different state. So we think this is substantial evidence of motivation. And I disagree that the magistrate addressed it under the proper framework because if you look at appendix page 30 of the report and recommendation, the magistrate said that we had a burden of clear and convincing evidence, which is not true. The magistrate got that idea from Pierce, who repeatedly argued in his briefing in an oral argument that we bore a burden of clear and convincing evidence to show invalidity. That is not the case. We merely have to present a question of invalidity that they are unable to show lacks substantial merit. We believe we did so in this case, unless your honors have any additional questions. Thank you. Thank you. I think that concludes our proceedings this morning.